# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
BURTON, HAGLER, and FLEMING
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Specialist FRANCIS L. BRUNETTA**
**United States Army, Appellant**

ARMY 20160697

Headquarters, Fort Drum
S. Charles Neill, Military Judge
Lieutenant Colonel John J. Merriam, Staff Judge Advocate

For Appellant: Lieutenant Colonel Tiffany M. Chapman, JA; Major Todd W. Simpson, JA; Captain Augustus Turner, JA (on brief); Major Todd W. Simpson, JA; Captain Augustus Turner, JA (on reply brief).

For Appellee: Colonel Tania M. Martin, JA; Major Cormac M. Smith, JA (on brief).

14 February 2019

--------------------------------
MEMORANDUM OPINION
--------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

HAGLER, Judge:

A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of three specifications of sexual assault by bodily harm, to wit: penetration of the victim's vulva with his penis, tongue, and finger, without her consent, in violation Article 120, Uniform Code of Military Justice [UCMJ], 10 U.S.C. § 920 (2012).[1]  The convening authority approved the adjudged sentence of a dishonorable discharge, confinement for seventy-eight months, and reduction to the grade of E-1.

We review this case under Article 66, UCMJ.  Appellant alleges two errors. First, appellant argues the military judge erred by failing to consider evidence of the victim's motive to fabricate under Military Rule of Evidence [Mil. R. Evid.] 608(c).

---

[1] The military judge found appellant not guilty of rape of the same victim, in violation of Article 120, UCMJ.

Second, appellant argues the military judge failed to admit constitutionally required evidence under Mil. R. Evid. 412(b)(1)(C). We find the military judge did not abuse his discretion in excluding and limiting this evidence.[2]

## BACKGROUND

Appellant's convictions arose from his sexual acts upon Specialist (SPC) NM at his off-post apartment in Watertown, New York, on 27 November 2015. Appellant and SPC NM were not close friends, but they knew each other through SPC NM's one-time fiancé, Private First Class (PFC) VC, who was in appellant's platoon. After reading on Facebook that appellant would be alone on Thanksgiving, SPC NM invited him to a potluck dinner hosted by members of her unit, the 10th Mountain Division Band. Appellant picked up SPC NM from her barracks on Fort Drum, and they drove to the dinner together.

After dinner, appellant bought alcohol and drove SPC NM to his off-post apartment, where they had drinks, sat on a couch in his living room, and watched movies. Appellant attempted to kiss SPC NM, and she resisted, saying, "I move slow . . . ." Specialist NM then laid on the floor and consented to appellant massaging her back and buttocks. She fell asleep during the massage and awoke to discover her leggings and underwear down and appellant inserting his finger in her vagina. Although SPC NM said nothing to appellant, she went to the bathroom to "reset," hoping appellant "got the memo" that she did not want to have sex with him. She returned to the living room, consented to another massage, and again awoke to find appellant digitally penetrating her vagina.

---

[2] We have considered the matters personally asserted by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982) and conclude they do not warrant relief.

While not raised by appellant, we have also considered whether relief is warranted in light of our recent opinion in *United States v. Peebles*, __ M.J. __, 2019 CCA LEXIS 8 (Army Ct. Crim. App. 10 Jan. 2019). Even assuming the military judge applied an incorrect *mens rea*, any such error did not result in material prejudice. *Compare Peebles with* Dep't of the Army, Pam. 27-9, Legal Services: Military Judges' Benchbook, ch. 3, para. 3-45-14 (10 Sep. 2014). In this case, as in *Rodriguez*, the parties "presented two diametrically opposing narratives regarding [NM's] consent or lack of consent" and thus appellant either "*knew* that [NM] was not consenting to the sexual acts, or [NM] *actually consented* to the acts." *See United States v. Rodriguez*, __ CCA LEXIS __ (Army Ct. Crim. App. 31 Jan. 2019) (mem. op.) (italics in original). As such, "this case did not present the middle ground where appellant could have been negligent in his mistaken belief that [NM] consented when she actually did not consent." *Id*.

At this point, SPC NM told appellant, "No," for the first time. Appellant then picked her up, put her on the couch, pried her thighs apart, and penetrated her vagina with his tongue and fingers, while she repeatedly said, "No" and, "Please stop." Appellant then inserted his penis into SPC NM's vagina and had intercourse with her, while she continued to voice her non-consent and began to cry. Appellant stopped and asked if she was okay. She replied she was not. He responded by pushing her to the ground and again having sexual intercourse with her as she cried. Afterwards, SPC NM got dressed, and appellant drove her back to her barracks on Fort Drum. The following day, SPC NM sought medical care and made a restricted report of sexual assault.[3]

As appellant admitted the sexual acts did occur, the key issue at trial was consent. Specialist NM maintained she did not consent and voiced her objection several times during the acts, while the defense argued she fabricated her claim of non-consent. Citing Mil. R. Evid. 412(b)(1)(C), appellant moved to introduce evidence of SPC NM's motive to fabricate:

> The alleged victim, [SPC NM], was engaged to a [PFC VC], who is known in his unit as a person with a violent temper who was given to outbursts of jealous rage, and that [SPC NM] had reason to fear [PFC VC's] reaction if he learned that she had engaged in consensual sexual intercourse with [appellant].

In the alternative, appellant argued, if the court found the proffered evidence was not within the ambit of Mil. R. Evid. 412, it should be admitted under Mil. R. Evid. 608(c) to show SPC NM's motive to fabricate.

In a motions hearing, the defense called witnesses, including appellant, to testify about PFC VC's jealous, controlling behavior regarding his then-fiancée, SPC NM, and his outbursts toward those he suspected of getting too close to her. Specifically, one witness testified that PFC VC pounded on and yelled outside SPC NM's door. A second witness testified that he overheard PFC VC cursing at SPC NM over the phone for not sending him nude photos of herself, and further, that PFC VC was "paranoid" and "controlling" regarding SPC NM. A third witness testified that PFC VC assaulted him and warned him to stay away from SPC NM. Appellant also testified that as he drove SPC NM back to her barracks after their sexual encounter, she made him promise not to tell anyone because she was worried about PFC VC's reaction. In contrast, SPC NM testified the conversation in appellant's car never occurred, and she was not aware of PFC VC's purportedly violent temper or jealous outbursts toward others. She testified she was not at all concerned about

---

[3] On 15 December 2015, the report became unrestricted when PFC VC notified his chain of command of the allegation.

PFC VC's reaction, as their engagement had ended, and she had no desire to reconcile with him.

The military judge issued a written ruling, which granted in part and denied in part the defense motion. The ruling contained four key conclusions. First, as a threshold matter, evidence concerning SPC NM's relationship with PFC VC (including their engagement, PFC VC's temperament and behavior, and appellant's conversation with SPC NM in his car) fell under the protections of Mil. R. Evid. 412. Second, evidence of SPC NM's engagement to PFC VC was probative of a motive to fabricate and admissible under Mil. R. Evid. 412(b)(1)(C). Third, evidence of appellant's alleged conversation with SPC NM in his car was probative of a motive to fabricate and admissible under Mil. R. Evid. 412(b)(1)(C).[4] Fourth, "all other evidence" of SPC NM's relationship with PFC VC, to include his purportedly violent temper and jealous behavior, was inadmissible under Mil. R. Evid. 412(a), essentially because appellant had not met his burden to show the evidence was relevant and material and further, because it did not pass the Mil. R. Evid. 403 balancing test:

> The Court notes that there was insufficient evidence to show that [PFC NM] was afraid of [PFC VC] or was otherwise in a controlling or abusive relationship with him. Assuming *arguendo* that the Defense had shown this evidence would be relevant and material, the Court finds the probative value would be substantially outweighed [by] the danger of unfair prejudice, confusing the issues, and misleading the members[.]

On appeal, appellant argues that the military judge erred in not admitting evidence of PFC VC's temperament and behavior under Mil. R. Evid. 608(c). Appellant also argues the military judge erred in his threshold finding that evidence of the relationship between SPC NM and PFC VC fell within the protections of Mil. R. Evid. 412 in the first place.

---

[4] The military judge's ruling did limit *how* the defense could introduce evidence of the alleged conversation, citing Mil. R. Evid. 403 and 611(a). The defense could not cross-examine SPC NM on her alleged statement during the government's case-in-chief; however, the defense could question her after evidence of the statement was offered through some other means.

**LAW AND DISCUSSION**

This court reviews a military judge's ruling to exclude evidence under Mil. R. Evid. 608(c) and Mil. R. Evid. 412 for abuse of discretion. *United States v. Collier*, 67 M.J. 347, 353 (C.A.A.F. 2009); *United States v. Roberts*, 69 M.J. 23, 26 (C.A.A.F. 2010). We review a military judge's findings of fact under a clearly erroneous standard and his conclusions of law de novo. *United States v. Ellerbrock*, 70 M.J. 314, 317 (C.A.A.F. 2011).

Under Mil. R. Evid. 412(a), evidence of an alleged victim's sexual predisposition or sexual behavior is generally inadmissible in a sex offense case unless an exception applies. The "constitutional" exception, Mil. R. Evid. 412(b)(1)(C), requires evidence to be admitted if it is relevant and material, and if its probative value outweighs the danger of unfair prejudice. *Ellerbrock*, 70 M.J. at 318-19. Mil. R. Evid. 608(c) allows evidence of bias, prejudice, or any motive to misrepresent to impeach a witness. Before finding evidence to be constitutionally required under Mil. R. Evid. 412(b)(1)(C), the military judge must apply the Mil. R. Evid. 403 factors. *United States v. Gaddis*, 70 M.J. 248, 256 (C.A.A.F. 2011).

*A. Findings of Fact*

In his ruling on the defense motion, the military judge made findings of fact, several of which are important to our discussion below. The military judge found "the Defense did not present evidence to support its theory that [SPC NM] was in an 'abusive' or 'controlling' relationship with PFC VC." Instead, the defense only offered evidence that PFC VC knocked loudly on SPC NM's door on one occasion, and he cursed at her over the phone for not sending him nude pictures. The military judge found SPC NM had refused PFC VC's demands to send him nude photos. He also found there was no evidence SPC NM was aware of the door knocking incident or of PFC VC's other violent, jealous behavior. Finally, the military judge found there was no evidence SPC NM was physically abused by PFC VC or afraid of him. We conclude the military judge's findings of fact are not clearly erroneous, as they are amply supported by the evidence in the record.

*B. Military Rule of Evidence 412*

Appellant argues the military judge applied Mil. R. Evid. 412 too broadly, and the government concedes this point in light of *United States v. Alston*, 75 M.J. 875 (Army Ct. Crim. App. 2016). We agree, yet we find appellant suffered no prejudice as a result of this error.

As to SPC NM's engagement to PFC VC, we find this evidence to be beyond the scope of Mil. R. Evid. 412. *See Alston*, 75 M.J. at 878-83. Even so, the military judge ruled in favor of the defense and admitted the evidence pursuant to Mil. R. Evid. 412(b)(1)(C). Similarly, the military judge allowed evidence of the alleged

5

conversation between appellant and SPC NM in his car, citing Mil. R. Evid. 412(b)(1)(C), while placing appropriate limits on how that evidence could be adduced. Regarding the evidence of PFC VC's jealous, violent temper, we agree such evidence is beyond the scope of Mil. R. Evid. 412. But as we discuss in more detail below, the military judge properly excluded it under Mil. R. Evid. 403. Thus, the military judge's overbroad application of Mil. R. Evid. 412 had no impact on the evidence actually admitted and did not prejudice appellant.

*C. Military Rule of Evidence 608*

Appellant also contends the military judge failed to consider the evidence in light of Mil. R. Evid. 608(c), the alternative basis of admissibility cited in the defense's Mil. R. Evid. 412 motion. We find no relief is warranted.

At trial, appellant offered the evidence about PFC VC's temperament and behavior for the same purpose under both Mil. R. Evid. 412 and Mil. R. Evid. 608(c): to impeach SPC NM by showing she had a motive to fabricate.[5] The military judge did not specifically mention Mil. R. Evid. 608 in his ruling; rather, he implicitly found the defense did not show the excluded evidence was "relevant and material."[6] To this extent this language creates any ambiguity regarding the military judge's application of Mil. R. Evid. 608(c), we find any such error was harmless because the military judge properly excluded the evidence under Mil. R. Evid. 403.

More specifically, the military judge found "the probative value [of this evidence] would be substantially outweighed [by] the danger of unfair prejudice, confusing the issues, and misleading the members." For this evidence to support a motive to fabricate, SPC NM would have to be aware of it. Among the military judge's findings of fact were that SPC NM was not aware of PFC VC's jealous behavior. With no evidence that SPC NM believed PFC VC was controlling or violent, we cannot see how evidence of such would have added to SPC NM's motive to misrepresent or affected a factfinder's view of her credibility. But we can see how allowing such evidence would tend to confuse the issues and sidetrack the trial on incidents and matters far removed from the charged offenses. Thus, we conclude the military judge acted within his discretion in excluding this evidence.

---

[5] In making this argument, the defense appeared to view Mil. R. Evid. 412(b)(1)(C) as an independent basis of admissibility, rather than what it actually is—an exception to the general rule of exclusion.

[6] Although the military judge did not explicitly state the evidence was not relevant or material, we interpret the military judge's predicate, "Assuming *arguendo* that the Defense had shown this evidence would be relevant and material," to mean that appellant failed to make such a showing.

### D. Right to Present a Defense

The overarching theme of appellant's assigned errors and *Grostefon* submissions is that the military judge's rulings denied appellant the ability to put on a full defense. We find this was not the case. The military judge permitted appellant to introduce evidence of SPC NM's engagement to PFC VC. This allowed the factfinder to determine if a relationship existed at the time of the offense and when SPC NM reported it, and to what extent, if any, that relationship gave SPC NM a motive to fabricate non-consent or to misrepresent her sexual contact with appellant. This seems entirely proper. In sum, our own examination of the record reveals no issues with factual or legal sufficiency and no concerns with appellant's constitutional right to put on a defense.

### CONCLUSION

The findings of guilty and the sentence are AFFIRMED.

Senior Judge BURTON and Judge FLEMING concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court